**Vivette A. BARNES, Plaintiff,**

**v.**

**Richard Reed WHITT, Defendant– Appellant,**

**and**

**Budget Rent–A–Car Systems, Inc., a Delaware corporation, d/b/a Budget Sales, Defendant–Appellee.**

**No. 92CA0050.**

Colorado Court of Appeals, Div. IV.

Feb. 25, 1993.

Rehearing Denied April 8, 1993.

No appearance for plaintiff.

Hall & Evans, Eugene O. Daniels, Malcolm S. Mead, Denver, for defendant-appellant.

Cooper & Kelley, P.C., John R. Mann, Elizabeth A. Starrs, Denver, for defendant-appellee.

Opinion by Judge MARQUEZ.

Defendant, Richard Whitt, appeals the summary judgment dismissing his cross-claim against defendant, Budget Rent–a–Car Systems, Inc. The trial court held that Budget was not obligated to provide coverage for Whitt under its certificate of self-

insurance. We reverse and remand for further proceedings.

The parties have stipulated to the following facts: On May 27, 1988, Whitt went to Budget Sales, a division of Budget Rent–a–Car Systems, Inc., which sells used rental cars to the public. Whitt became interested in purchasing a certain vehicle owned by Budget and held for sale by Budget Sales and asked if he could take the car to his mechanic for an examination. The Budget Sales representative agreed, and Whitt signed a form entitled "Test Drive Authorization." This form did not contain any provision relating to automobile insurance.

Whitt was neither an employee nor an agent of either Budget Sales or Budget Rent–a–Car Systems and did not pay Budget for insurance coverage of any kind in connection with his test drive of the vehicle in question.

Later that evening, Whitt was involved in an accident with an automobile driven by plaintiff, Vivette A. Barnes. Barnes subsequently brought this negligence action against Whitt for injuries sustained in that accident. Barnes also asserted a claim against Budget but later voluntarily dismissed that claim.

At the time of the accident, Whitt was an insured under a policy of automobile insurance issued by Mid–Century Insurance Company, a member of Farmers Insurance Exchange. After discovery, and after plaintiff's claim against Budget was dismissed, plaintiff's claims against Whitt were settled for $52,000, of which Budget paid $25,000 to the plaintiff on December 7, 1989, and Farmers Insurance Exchange paid $27,000. Pursuant to this settlement, the court entered an order on December 28, 1989, dismissing all of plaintiff's claims with prejudice.

At the time the settlement agreement was made, Farmers Insurance Group, through their insured, Whitt, had a cross-claim against Budget for reimbursement for the amounts Farmers would pay in settlement of the claim. Budget offered to pay $27,000 in settlement of plaintiff's claims if Farmers would decline to pursue the cross-claim. Farmers rejected this of-fer and instead agreed to accept a contribution of $25,000 from Budget in exchange for the right to litigate Farmers' cross-claim against Budget to a conclusion. At the time payment was made, Whitt's cross-claim against Budget was still pending and Budget's obligations as a self-insurer under Colorado law were unresolved.

The parties do not dispute that Budget was issued a certificate of self-insurance by the Colorado Department of Revenue and that Budget owned the vehicle being driven by Whitt at the time of the accident.

On July 31, 1990, the court granted Budget's motion for summary judgment on Whitt's cross-claim against Budget concerning insurance coverage. The court held that: "Budget owes no duty to provide coverage to Mr. Whitt, no duty to defend, and no duty to indemnify Mr. Whitt in this case."

■ Whitt contends that the Colorado Automobile Reparations Act (No–Fault Act), § 10–4–701, et seq., C.R.S. (1987 Repl. Vol. 4A) obligates all vehicle owners, without exception, to insure their vehicles against liability for bodily injury arising from the vehicle's permissive use. Budget contends it has no duty to provide liability coverage to Whitt because self-insurance is not an insurance policy. We agree with Whitt.

Budget asserts, that unlike a rental situation, it did not contract to provide liability insurance to Whitt. Whitt, however, relies on certain statutory provisions for his contention that Budget is liable to him.

Section 10–4–705(1), C.R.S. (1987 Repl. Vol. 4A) provides:

Every owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 7 covering the said motor vehicle, and any owner who fails to do so shall be subject to the sanctions provided under section 42–4–1213 and section 42–7–301,

C.R.S. of the 'Motor Vehicle Financial Responsibility Act'.

Section 10–4–705(2), C.R.S. (1987 Repl. Vol. 4A), which has subsequently been amended, *see* § 10–4–705(2), C.R.S. (1992 Cum.Supp.), in effect on the date of this accident, provided:

> *Any* owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state who fails to have in full force and effect a complying policy covering said motor vehicle at the time of any accident, on account of which benefits under section 10–4–706(1)(b) to (1)(e) would be payable, shall be personally liable for the payment of such benefits to the person for whom such payment would have been required, if such coverage had been in effect … *Such an owner shall have all of the rights and obligations of any insurer under this part 7.* (emphasis added)

Section 10–4–706, C.R.S. (1987 Repl.Vol. 4A) contains provisions for required coverages.

Self-insurers are both authorized and defined in § 10–4–716, C.R.S. (1987 Repl.Vol. 4A), which provides:

> (1) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the director.
>
> (2) The director may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay direct benefits as required under section 10–4–706(1)(b) to (1)(e) and to pay any and all judgments which may be obtained against such person. Upon not less than five days' notice and a hearing pursuant to such notice, the director may, upon reasonable grounds, cancel a certificate of self-insurance. Failure to pay any benefits … or failure to pay any judgment within thirty days after such judgment shall have become final shall constitute a reasonable

ground for the cancellation of a certificate of self-insurance.

Section 42–7–501, C.R.S. (1984 Repl.Vol. 17) contains similar provisions.

Section 10–1–102(7), C.R.S. (1987 Repl. Vol. 4A) defines insurance as:

> [A] contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies, and includes annuities.

However, § 42–4–1213(1), C.R.S. (1984 Repl.Vol. 17) provides:

> No owner of a motor vehicle required to be registered in this state shall operate the vehicle or permit it to be operated on the public highways of this state when he has failed to have a complying policy or certificate of self-insurance in full force and effect as required by sections 10–4–705 and 10–4–716, C.R.S.

Section 42–4–1213(4), C.R.S. (1984 Repl.Vol. 17) makes violation of the terms of § 42–4–1213(1) a class 1 traffic offense.

Thus, a certificate of self-insurance serves to demonstrate the financial responsibility of the self-insured party. *See* § 42–7–302(1)(a), C.R.S. (1984 Repl.Vol. 17).

### A.

██ Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. *Woodsmall v. Regional Transportation District,* 800 P.2d 63 (Colo.1990). To determine legislative intent, we must look primarily to the language of the statute itself and then give effect to the statutory terms in accordance with their commonly accepted meaning. *Kern v. Gebhardt,* 746 P.2d 1340 (Colo.1987).

██ When the language is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction and the statute must be applied as written. If, however, the language is ambiguous or uncertain as to its intended scope, with the result that the text lends itself to alternative constructions, a court may look to the object sought to be at-

tained by the General Assembly, the circumstances under which the statute was enacted, and the legislative history of the statute. *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070 (Colo.1992).

■ If the intended scope of the statutory language is unclear, a court may consider the consequences of a particular construction. *Jones v. Cox*, 828 P.2d 218 (Colo.1992).

■ The No–Fault Act is to be liberally construed to further its remedial and beneficent purposes. *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976).

The owner of a motor vehicle is required to carry compulsory liability coverage by the express terms of the Act. *United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc.*, 842 P.2d 208 (Colo.1992) (Kirshbaum, J., specially concurring). While a certificate of self-insurance is not an insurance policy, *White v. Regional Transportation District*, 735 P.2d 218 (Colo.App.1987), our supreme court in *State Farm Mutual Automobile Insurance Co. v. Cabs, Inc.*, 751 P.2d 61 (Colo.1988), held that a taxi cab company, which maintained a certificate of self-insurance and qualified as a self-insurer under § 10–4–716, was an insurer under the provisions of the No–Fault Act.

### B.

Section 10–4–705(1) provides that every owner of a motor vehicle who knowingly permits the operation of the motor vehicle on the public highways shall have in full force and effect a complying policy. Likewise, § 10–4–705(2), in effect on the date of the accident, provided that any owner of a motor vehicle who knowingly permits the operation of that vehicle and who fails to have a complying policy at the time of any accident, on account of which benefits personal injury benefits would be payable, shall be personally liable. Further, as quoted above, it contains the explicit requirement that: "Such an owner shall have all of the rights and obligations of any insurer under this part 7." These statuto-

ry provisions do not provide either for exceptions or exemptions.

Budget, however, refers to the language of § 10–4–716 requiring a party applying for a certificate of self-insurance to demonstrate the ability "to pay any and all judgments which may be obtained against such person." It asserts that, although § 10–4–716 expressly requires self-insurers to pay the personal injury protection (PIP) benefits to accident victims, and to pay judgments obtained against the self-insurer, nothing in that section obligates a self-insurer to pay a judgment obtained against any other person. We reject these arguments.

Although § 10–4–716 provides for issuance of a certificate of self-insurance upon satisfactory proof of ability to pay PIP benefits to accident victims and "to pay any and all judgments which may be obtained against such person," these provisions do not operate as an exclusion of liability coverage. Section 10–4–716 does not state that a self-insurer is exempted from any requirement to provide liability coverage. The limiting language upon which Budget relies, in our view, simply refers to a requirement which a proposed self-insurer must meet before the director issues a certificate of self-insurance and not to limit the self-insurer's obligation to provide liability coverage. The statutory phrase "any and all judgments which may be obtained against such person" may include judgments incurred for liability resulting from accidents involving vehicles which an owner knowingly permits to be driven on the public highways.

*United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc., supra,* was a case in which a vehicle, which was being operated under an automobile rental company's rental agreement, was involved in an accident. The concurring opinion stated that as the owner of a motor vehicle, the rental company is required to carry compulsory liability coverage by the express terms of the Act. It observed that the rental company owned the automobile involved in the accident and knowingly permitted the renter of the automobile to oper-

**1326**

ate it. It thus concluded that the fact that the rental company elected to self-insure its vehicles is immaterial; self-insurers must comply with the standards applicable to commercial insurers with respect to liability responsibility.

Budget's construction of these provisions would defeat the General Assembly's declaration in enacting the No–Fault Act that its purpose was to avoid inadequate compensation to victims of automobile accidents. *See* § 10–4–702, C.R.S. (1987 Repl.Vol. 4A). Further, such a construction would place the self-insurer in a position superior to that of an owner who has complied with the No–Fault Act by purchasing an insurance policy.

Thus, we conclude that the language of the statutes requires every owner of a motor vehicle to provide liability coverage for bodily injury arising from the vehicle's permissive use without exception and that the provisions with regard to self-insurers do not limit that obligation. Because of our conclusion we also reject Budget's further assertion that, in this case, the General Assembly's purpose is adequately served because the plaintiff can be compensated through Whitt's policy.

Our resolution of these issues finds support in the decisions of courts in certain other states construing statutory provisions relating to self-insurers, although we recognize that those statutory provisions vary. *See White v. Howard,* 240 N.J.Super. 427, 573 A.2d 513 (1990); *Southern Home Insurance Co. v. Burdette's Leasing Service, Inc.,* 268 S.C. 472, 234 S.E.2d 870 (1977).

While other jurisdictions have taken positions contrary to those cited, *see e.g., Orkin Exterminating Co. v. Robles,* 128 Ariz. 132, 624 P.2d 329 (1981), we conclude that such holdings are not in accord with the General Assembly's intent in enacting the No–Fault Act.

We conclude that self-insurers are required to provide liability coverage on their automobiles in the same manner as all other owners.

The judgment is reversed, and the cause is remanded for further proceedings.

PLANK and JONES, JJ., concur.