**Wendy L. JONES, Plaintiff–Appellant,**

v.

**USAA CASUALTY INSURANCE COMPANY, Defendant–Appellee.**

No. 96CA1160.

Colorado Court of Appeals, Div. III.

Aug. 7, 1997.

Rehearing Denied Sept. 11, 1997.

Certiorari Denied March 9, 1998.

Pribila and Sokolow, P.C., Anthony L. Sokolow, Colorado Springs, for Plaintiff–Appellant.

Zupkus & Ayd, P.C., Patricia M. Ayd, Greenwood Village, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this declaratory judgment action concerning no-fault automobile insurance coverage, plaintiff, Wendy L. Jones, appeals the summary judgment entered in favor of defendant, USAA Casualty Insurance Company (USAA). We reverse and remand.

The facts of this case are not disputed. As a result of injuries sustained in an automobile accident, Jones was unable to work for 76 days. By virtue of her having accumulated sick leave, she received sick pay benefits from her employer during this period in an amount equal to her usual wages.

Jones requested PIP work loss benefits from USAA under her automobile policy for the period she was unable to work. Contending that Jones was not entitled to recover for such benefits because she had not suffered a "loss of income," USAA denied her request.

Jones commenced this proceeding requesting a declaration concerning coverage for work loss under the USAA policy. Upon cross-motions for summary judgment, the trial court ruled in favor of USAA, and this appeal followed.

I.

Jones contends that the trial court erred in ruling that she had not suffered a loss of income pursuant to the terms of her USAA policy nor a loss of gross income pursuant to § 10–4–706, C.R.S. (1994 Repl.Vol. 4A) of the Colorado Auto Accident Reparations Act (No-fault Act). Because we determine that

Jones is entitled to payment for work loss benefits pursuant to the terms of her policy, we do not address whether Jones suffered a loss of gross income under the No-fault Act.

■ The interpretation of a contract, including an insurance contract, presents a question of law that we review *de novo. General Insurance Co. v. Smith,* 874 P.2d 412 (Colo.App.1993).

The terms of an insurance policy are to be interpreted in accordance with general rules of contract interpretation, *Wota v. Blue Cross & Blue Shield of Colorado,* 831 P.2d 1307 (Colo.1992), and will be construed to promote the intent of the parties. *Allstate Insurance Co. v. Starke,* 797 P.2d 14 (Colo. 1990). As with any contract, we first look to the plain language of the policy itself to ascertain such intent. *See Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.,* 874 P.2d 1049 (Colo.1994).

Unless there is an ambiguity in the policy language, the policy must be enforced as written. *Ballow v. PHICO Insurance Co.,* 875 P.2d 1354 (Colo.1993). A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Terranova v. State Farm Mutual Automobile Insurance Co.,* 800 P.2d 58 (Colo.1990).

If an ambiguity in the policy language is found, it must be construed against the drafter of the document and in favor of providing coverage to the insured. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo. 1992).

Here, the insurance policy provided that USAA would pay personal injury protection benefits in accordance with the No-fault Act for: *"work loss ... incurred with respect to bodily injury sustained by an eligible injured person caused by an accident arising out of the use or operation of a motor vehicle."* (emphasis added)

In construing the term "work loss," we first look to the policy definition where that term is defined as *"loss of income ... from work* the eligible injured person would have performed but for the bodily injury." (emphasis added) We read "work loss" to refer to a certain, limited type of lost income; namely, that income an insured would have

received from working had the insured not suffered a bodily injury.

■ Because the common, ordinary understanding of "loss of income ... from work" is "lost wages," we thus read USAA's "work loss" clause simply to provide coverage for lost wages. *See Webster's College Dictionary* 1496 (1991) ("wages" means "money that is paid or received for work or services"); *see also Bondi v. Liberty Mutual Insurance Co.,* 757 P.2d 1101 (Colo.App.1988) (equating "work loss" with "lost wages"). Hence, under the plain reading of the definition of "work loss," Jones is eligible for such coverage if she lost wages from work.

It is undisputed that Jones' employer paid her for 76 days of sick leave and that such payments were equal to the wages she would have earned during that period. Jones' employer did not, however, pay her any money for work during this period because she performed no work. Monetary benefits received from the use of accrued sick pay cannot, by necessary implication, constitute lost wages from work because such benefits are not paid by an employer for work performed. Rather, they are provided when an employee does *not* work because of sickness or other incapacitation. USAA's contention that its definition of work loss excludes coverage for use or "loss" of such non-wage benefits as sick leave or vacation time resulting from an insured's inability to work does not affect our conclusion. Under the policy definition of "work loss," the premiums Jones paid provided coverage for wage loss from work. The fact that she expended valuable employee benefits because of her injuries is irrelevant to the determination of whether she suffered "work loss."

Nor is our conclusion affected by the fact that Jones would have to report the receipt of such benefits as "income" within the meaning of the tax law. We are interpreting the insurance policy, not the tax code.

■ We therefore conclude that, because Jones' employer did not pay her wages for work performed during her 76–day absence from the workplace, she suffered "work loss" as that term is defined in the USAA policy.

Our conclusion is supported by the National Conference of Commissioners' interpretation of a similar "work loss" provision under the Uniform Motor Vehicle Accident Reparations Act § I(a)(5)(ii), 14 *Uniform Laws Annot.* 46 (1990), which provides that:

> [A]n employed person who loses time from work he would have performed had he not been injured has suffered work loss, even if his employer continues his wages under a formal wage continuation plan or as a gratuity. Employer payments in this situation are collateral source payments rather than wages since they are not payments for work done during the time the employee was absent. Nor would wage continuation payments be subtracted in the calculation of net loss.

■ Although not conclusive, we give deference to this interpretation. *See Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Bondi v. Liberty Mutual Insurance Co., supra.*

### II.

USAA nevertheless argues that, because the term "loss of gross income" is included in a policy provision addressing the maximum benefit payable as work loss, we must read the policy to preclude work loss coverage for Jones. We reject this argument.

■ The meaning of an insurance policy term must be ascertained by reference to the meaning that a person of ordinary intelligence would attach to it. *See Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992).

Public policy favors protecting insurance consumers by requiring insurers to disclose fully and fairly to insureds what insurance protection is actually being provided for the premium charged. *See Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979).

Here, a USAA policy clause provided that:
> [T]he maximum benefit payable for work loss is four hundred dollars ($400) per week subject to the following limitations:
> a. one hundred percent (100%) of the first one hundred twenty-five dollars ($125) of loss of gross income per week; and
> b. seventy percent (70%) of the next one hundred twenty-five dollars ($125) of loss of gross income per week; and
> c. sixty percent (60%) of any loss of gross income in excess of two hundred fifty dollars ($250) per week.

■ We conclude that the term "loss of gross income" in the policy carries the same meaning as the term "work loss" in the first sentence of the provision, *i.e.,* lost wages. A different interpretation of that term would create a conflict within the provision itself.

USAA argues that an insured absent from work does not suffer a loss of gross income unless he or she receives an amount less than such person would ordinarily receive for working. Therefore, it asserts, the plain meaning of the undefined term "loss of gross income" precludes the calculation of, and therefore a finding of, work loss. Although USAA fails to state the plain meaning of the term "loss of gross income," to accept USAA's argument we would necessarily have to conclude that the term's plain meaning is something other than lost wages. We find USAA's argument unpersuasive.

First, we fail to perceive how a person of ordinary intelligence would understand that the use of the undefined term "loss of gross income" in a calculation provision should be read to possess a different meaning and, in fact, modify the meaning of the expressly defined term "work loss." However, even if we were to assume, *arguendo,* that the term "loss of gross income" is reasonably susceptible to USAA's interpretation, because the term as used in the policy is at least as susceptible to meaning "lost wages," an ambiguity in the policy would necessarily exist. In such a situation, we would construe the ambiguity against USAA, the drafter, and in favor of coverage for Jones. *See Simon v. Shelter General Insurance Co., supra.*

Second, USAA's interpretation is discredited by decisions of this court equating the term "loss of gross income" with "lost wages." *See Grahn v. Truck Insurance Exchange,* 827 P.2d 571 (Colo.App.1991); *Bondi v. Liberty Mutual Insurance Co., supra.*

These cases are particularly instructive here because the language of § 10–4–706, C.R.S. (1994 Repl.Vol. 4A) discussed therein specifies that "loss of gross income" is based upon "work the injured person would have performed had he not been injured," language similar to the policy's definition of "work loss."

We also note that the significance that USAA places on the policy's use of the term "loss of gross income" is belied by its failure to use that term in other documents provided to an insured. Specifically, on forms provided to insureds outlining coverage options, USAA simply states that "Maximum Work Loss" consists of "$400WK/52WKS, 100%/70%/60%." No mention is made of "loss of gross income."

Nor are we persuaded by USAA's argument that sick pay benefits comprise gross income because they constitute payment received from the employer as consideration for past work. Even if such benefits represent a payment for past work, the policy defines work loss as loss of income during lifetime "from work the eligible injured person would have performed but for the injury." The policy does not reference income received for past work actually performed by the insured but, rather, refers to income lost from work that would have been performed by the insured had the injury not intervened. Thus, the insurance policy does not support USAA's contention.

### III.

USAA argues that a provision concerning duplication of benefits in its policy precludes Jones from receiving work loss coverage because she received sick pay benefits. We disagree.

The duplication of benefits clause provides: "No eligible injured person shall recover duplicate benefits for the same elements of loss under *this and any similar insurance,* including *self insurance.*" (emphasis added)

USAA interprets the undefined term "self insurance" to include sick pay benefits, arguing that, because Jones received sick pay from her employer, the policy prohibits her from receiving a "double" recovery in the

form of work loss. USAA's argument fails for a number of reasons.

First, a plain reading of the duplication of benefits provision does not support USAA's position. The term "self insurance" is equated with "this and any similar insurance"; namely, no-fault automobile insurance. There is nothing in this clause, or any other part of the policy, to suggest that sick pay benefits are considered "similar" to no-fault insurance so as to constitute "self insurance."

Second, we reject USAA's reliance on *Riss & Co. v. Anderson,* 108 Colo. 78, 114 P.2d 278 (1941) for the proposition that: "Employee benefits such as hospitalization and medical services are included within the meaning of 'self insurance.'" The only language in *Riss* dealing with self insurance is the court's statement that: "The record is *not* clear that the so-called telephone company benefit plan is self insurance under the Workmen's Compensation Act, but we shall assume it is." (emphasis added)

Third, we note that cases discussing the term "self insurance" as used in the no-fault insurance context involve situations in which an organization, such as a rental car company, has self insured pursuant to § 10–4–716, C.R.S. (1994 Repl.Vol. 4A). *See Passamano v. Travelers Indemnity Co.,* 882 P.2d 1312 (Colo.1994); *Barnes v. Whitt,* 852 P.2d 1322 (Colo.App.1993). Such circumstances are not present here.

USAA argues that a purpose of the No-fault Act is to prevent double recovery and duplication of benefits. We agree that is a purpose of the act, *see Newton v. Nationwide Mutual Insurance Co., supra;* however, there is nothing in the statute that prevents a carrier from providing greater benefits to its policyholders than what may be minimally required by the statute. Because we are here interpreting the duplication of benefits provision of the insurance policy, and not the statute, USAA's argument is unavailing.

■ Accordingly, we conclude that nothing in the language of the duplication of benefits provision permits USAA to set off or withhold payments due under the work loss clause by that amount its insured received in

sick pay benefits during the period that she could not work.

Hence, because Jones suffered work loss as that term is defined and used in her policy, and because the duplication of benefits provision does not preclude such recovery, USAA must pay Jones pursuant to the terms of its policy for her lost wages.

In light of our disposition of this issue, we do not address the statutory provisions in the No-fault Act relative to loss of income or duplication of benefits.

Finally, we reject USAA's assertion that, if it owes loss of income benefits, those benefits would be payable to Jones' employer. As discussed, Jones paid a premium to USAA to cover her for lost wages. Her employer did not pay her wages during the time of her absence and it has asserted no claim to the policy proceeds.

The judgment is reversed and the cause is remanded with instructions to enter judgment declaring that USAA is obligated to pay work loss benefits to Jones.

STERNBERG, C.J., and KIRSHBAUM*, Justice, concur.