**Elizabeth DeHERRERA, as mother and next friend of Lucas DeHerrera, Plaintiff–Appellant,**

v.

**SENTRY INSURANCE COMPANY, Defendant–Appellee.**

**No. 97CA1369.**

Colorado Court of Appeals, Div. V.

April 1, 1999.

Certiorari Granted Feb. 14, 2000.

The Law Firm of David Graham, David Graham, Taos, New Mexico, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., Arthur J. Kutzer, Pamela L. Mosher, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge MARQUEZ.

In this action for automobile insurance policy benefits, plaintiff, Elizabeth DeHerrera, as mother and next friend of Lucas DeHerrera, appeals the summary judgment entered

in favor of defendant, Sentry Insurance (Sentry). We affirm.

The following facts are undisputed. Plaintiff's son, Lucas DeHerrera, while riding his off-road motorcycle on a public street, was injured in an accident with a pickup truck. The motorcycle was neither licensed nor registered to operate on the streets and highways of Colorado. At the time of the accident, plaintiff was insured by Sentry under a policy which provided coverage for two automobiles.

Plaintiff alleged in her complaint that the cost of treatment for the injuries suffered by Lucas exceeded $100,000, and that plaintiff has been paid $50,000, the limit of liability insurance coverage from the insurer of the driver of the pickup.

Although plaintiff requested personal injury protection (PIP) and underinsured motorist (UIM) benefits, Sentry refused to provide them. Plaintiff then filed this suit seeking declaratory relief and alleging breach of contract. Both parties filed motions for summary judgment.

The trial court granted Sentry's motion for summary judgment and denied plaintiff's motion. It concluded that Lucas was not entitled to PIP benefits because the policy provides coverage only for cars. It also concluded that no coverage was available under the Colorado Auto Accident Reparations Act (No–Fault Act), § 10–4–701, et seq., C.R.S. 1998, because the statute specifically excludes motorcycles and off-road vehicles from the definition of motor vehicle. Finally, it determined that underinsured motorist benefits were unavailable because the Sentry policy, which the court concluded was unambiguous, provides uninsured motorist coverage for bodily injury an insured suffers "while occupying a car or as a pedestrian" and the No–Fault Act does not require coverage for individuals riding off-road motorcycles.

## I.

Plaintiff contends that she is entitled to PIP benefits under the terms of the insurance contract. Specifically, she asserts that coverage is available because Lucas was the victim of an accident which arose out of the use and operation of a motor vehicle. We disagree.

■ The interpretation of a contract, including a contract for insurance, is a matter of law which we review *de novo, Union Insurance Co. v. Houtz,* 883 P.2d 1057 (Colo. 1994), and this court is not bound by the trial court's interpretation. *Colard v. American Family Mutual Insurance Co.,* 709 P.2d 11 (Colo.App.1985).

■ As with any contract, we first look to the plain language of the policy itself to ascertain the intent of the parties. Unless there is an ambiguity in the policy language, the policy must be enforced as written. *Jones v. USAA Casualty Insurance Co.,* 952 P.2d 819 (Colo.App.1997).

■ A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Union Insurance Co. v. Houtz, supra; Carlisle v. Farmers Insurance Exchange,* 946 P.2d 555 (Colo.App.1997).

■ When construing the language of an insurance contract, we must consider its provisions as a whole. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992).

■ An insurance policy and the endorsement attached to it must be considered as a single instrument, and, in the absence of an internal conflict that cannot be reconciled, the two documents should be construed together. *Simon v. Shelter General Insurance Co., supra.*

■ The provision upon which plaintiff relies here appears under the endorsement for personal injury protection coverage. According to that endorsement, the provisions of the policy apply unless modified by the endorsement. The endorsement in part, provides:

> We will pay, in accordance with the Colorado Auto Accident Reparations Act, personal injury protection benefits shown as applicable in the Schedule or Declarations to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the use or operation of a motor vehicle.

The endorsement defines "motor vehicle" as "any motor vehicle required to be registered and licensed for operation on the public highways of Colorado or any other jurisdiction, including trailers."

However, the policy issued by Sentry also contains a section entitled "Plain Talk Car Policy" and includes the following provision:

When *you* pay the required premium, we agree that this policy provides the protection and limits you have selected as shown on the declarations page. The declarations page is part of this policy. This insurance applies only to *car accidents* and losses which occur while the policy is in force .... (emphasis in original)

It further states that: "We insure the *car* described on the declarations page and any *car* you replace it with." (emphasis in original)

The policy includes the following definitions:

Car; a 4 wheel motor vehicle licensed for use on public roads. It also includes any motor home that isn't used for business purposes and any utility trailer;

Car accident; an unexpected and unintended event that causes bodily injury or property damage *and arises out of the ownership, maintenance, or use of a car or other motor vehicle;*

Motor vehicle; a land motor vehicle designed for use on public roads, including cars and trailers, and any other land motor vehicle while used on public roads. (emphasis added)

The policy further provides:

We promise to pay medical expenses for *your* bodily injury ... suffered in a *car accident* while *occupying* a *car,* or as a pedestrian, as a result of having been struck by a *motor vehicle.* (emphasis in original)

### A.

Sentry argues that the endorsement cannot be read in isolation to provide coverage and that the policy does not otherwise afford coverage for Lucas because he was not a "pedestrian" or "occupying a car" at the time of the accident. We agree.

As noted, the endorsement expressly states that the provisions of the policy apply unless modified by the endorsement. The endorsement upon which plaintiff relies must be read in conjunction with the "plain talk" portion of the policy. *See Simon v. Shelter General Insurance Co., supra.*

The policy definition of "car accident" as quoted above limits coverage to events arising of use of a "car or other motor vehicle." And, "motor vehicle" extends only to vehicles designed for use on public roads, which the motorcycle was not.

Further, Sentry promises to pay the insured medical expenses incurred while the insured is "occupying a car or as a pedestrian." Thus, to be covered under the PIP endorsement, an insured must also be occupying a car or be a pedestrian.

Plaintiff relies on *Prudential Property & Casualty Insurance Co. v. LaRose,* 919 P.2d 915 (Colo.App.1996) to assert that an insured's understanding that coverage is available cannot be defeated by conflicting language which at best creates ambiguity. However, the terms of the policy at issue in *Prudential* differ from those in the Sentry policy.

In *Prudential,* the UIM provision stated that payment would be made "when an insured (whether or not occupying a car) is struck by an insured or underinsured motor vehicle." Another portion of the policy provided that, "you and a resident relative are insured while using your car" or "if hit ... while a pedestrian." *Prudential Property & Casualty Insurance Co. v. LaRose, supra,* 919 P.2d at 916. The division in that case held that the provisions were in conflict and ambiguous and, thus, were to be construed against the insurer and in favor of coverage to the insured.

However, the endorsement in *Prudential* stated an obligation to pay an insured for bodily injury "that is covered *under this part,* when an insured (*whether or not occupying a car*) is struck by an uninsured or underinsured motor vehicle." (emphasis added) The first portion of the payment obli-

gation appeared to extend coverage only to bodily injury covered "under this part." "This part" included the definitional section, which excluded motorcycles. On the other hand, the second portion of the payment obligation appeared to extend coverage to any insured, "whether or not occupying a car." This would include a motorcyclist. As a result of the arguable conflict in the payment obligations, the provisions were sufficiently ambiguous to require that they be construed against the insurer.

In contrast, the endorsement here states an obligation to pay the benefits "provided for in the Schedule and Declarations." While those describe the *amounts* of various payment obligations, they do not address the *circumstances* in which the insurer is obligated to make any payment. Those are stated in other portions of the policy, including the definitional section which excludes motorcyclists from coverage for PIP benefits.

Plaintiff essentially asserts that Lucas was the victim of an accident which arose out of the use and operation of a pickup truck and thus is covered under the provision of the endorsement which states that: "The bodily injury must be caused by an accident arising out of the use or operation of a motor vehicle." However, this provision is not part of a payment obligation, but rather, it is stated as a separate *condition* of payment.

Nothing in the statement of that condition indicates that it is the *only* condition of payment. Instead, the definition of "car accident" stated elsewhere in the policy provides additional, but not conflicting, conditions to payment. Together, these conditions describe the circumstances in which the obligation arises to pay any part of the amounts stated in the Schedule and Declarations.

We therefore conclude that, unlike the conflicting provisions in question in *Prudential,* the provisions here are not in conflict. Thus, they are not ambiguous.

### B.

■ Nor is coverage required under the provisions of the No–Fault Act. Coverage is provided under the statute only for motor vehicles and specifically "does not include

motorcycles" or "any vehicle designed primarily for use off the road." *See* § 10–4–703(7), C.R.S.1998; *Thompson v. Dairyland Insurance Co.,* 618 P.2d 736 (Colo.App.1980).

While plaintiff contends that Sentry has not asserted that there are any exclusions or limitations contained in the PIP endorsement which apply to the facts of this accident, in view of our disposition above, we do not further address this contention.

### II.

Plaintiff also argues that she is entitled to underinsured motorist benefits under Colorado law. We disagree.

### A.

We first reject her contention that the policy language is ambiguous.

As a preliminary matter, we reject Sentry's assertion that plaintiff cannot claim ambiguity in the policy for the first time on appeal. The record indicates that she raised this issue in her motion for summary judgment.

■ A mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity. *State Farm Mutual Automobile Insurance Co. v. Stein,* 940 P.2d 384 (Colo.1997). Thus, a court may not rewrite an unambiguous policy nor limit its effect by a strained construction. *Terranova v. State Farm Mutual Automobile Insurance Co.,* 800 P.2d 58 (Colo.1990).

■ Here, the provision YOUR POLICY AT A GLANCE contains the following language:

UNINSURED MOTORIST INSURANCE protects you from drivers who don't have insurance and from hit-and-run drivers. We'll pay the damages you're entitled to recover from an uninsured motorist because of bodily injury.

The PLAIN TALK portion of the policy also contains the following promise:

We promise to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily

injury you suffer in a car accident *while occupying a car or, as a pedestrian,* as a result of having been struck by an uninsured motor vehicle. (emphasis added)

It also states:

Anyone *occupying,* with *your* permission, a car we insure has the same rights and obligations that *you* have under this insurance. (emphasis in original)

The section titled PLAIN TALK CAR POLICY SUMMARY DISCLOSURE FORM provides:

This [uninsured motorist] coverage applies where a covered person is involved in a car accident with an uninsured motorist. For a covered person to be entitled to payment under this Part the accident must be the fault of the uninsured motorist....

Plaintiff does not assert that Lucas was occupying a car or was a pedestrian when the accident occurred. Rather, she contends that to have known that there would be a question about coverage, she would have had to cross-reference various parts of the policy carefully and apply fairly complicated rules of statutory construction as well as English grammar. We disagree.

The language above clearly demonstrates that persons are covered only when they are involved in a car accident with an uninsured motorist while occupying a car or as a pedestrian. Significantly, several terms of the contract, including "occupying a car," were emphasized by use of italics to bring these terms to plaintiff's attention. Thus, the plain and ordinary language of the policy indicates that the parties expressly intended to limit uninsured motorist insurance to these specific situations.

Consequently, we agree with the trial court's conclusion that the policy is not ambiguous and that plaintiff is not entitled to underinsured motorist benefits.

## B.

We also reject plaintiff's contention that any requirement that an insured be "occupying a car" to receive underinsured motorist coverage is void because it violates public policy.

■ Despite the fact that a term in a policy is unambiguous, it may be void and unenforceable if it violates public policy by attempting to dilute, condition, or limit statutorily mandated coverage. A policy term is not void as against public policy, however, simply because it narrows the circumstances under which coverage applies. *Allstate Indemnity Co. v. Gonzales,* 902 P.2d 953 (Colo. App.1995).

■ In pertinent part, § 10–4–609(1)(a), C.R.S.1998, provides:

No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury ... *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... (emphasis added)

The purpose of underinsured motorist coverage is to provide an insured with benefits to the extent necessary to recover for a loss caused by a negligent and financially irresponsible motorist. *Kral v. American Hardware Mutual Insurance Co.,* 784 P.2d 759 (Colo.1989); *Freeman v. State Farm Mutual Automobile Insurance Co.,* 946 P.2d 584 (Colo.App.1997).

Plaintiff argues that the language which purports to limit underinsured motorist coverage to injuries sustained while occupying only a specific type of vehicle is inconsistent with the express language, intent, and public policy considerations of § 10–4–609(1). We disagree.

Even if Lucas is an insured, excluding motorcycles from uninsured motorist coverage does not violate public policy. *See Allstate Indemnity Co. v. Gonzales, supra.*

■ Thus, we conclude that narrowing underinsured motorist coverage to circum-

stances where an insured is occupying a covered automobile does not violate public policy.

Accordingly, the summary judgment in favor of Sentry is affirmed.

Judge BRIGSS and Judge TAUBMAN concur.