Elizabeth DeHERRERA, as mother and next friend of Lucas DeHerrera, a minor, Petitioner,

v.

SENTRY INSURANCE COMPANY, Respondent.

No. 99SC379.

Supreme Court of Colorado, En Banc.

April 30, 2001.

Graham Law Firm, David Graham, Lara L. DeCaro, Taos, NM, Attorneys for Petitioner.

Senter Goldfarb & Rice, L.L.C., Arthur J. Kutzer, Denver, CO, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this appeal we review the court of appeals' holding that it is permissible for an automobile insurance policy to exclude a person occupying a vehicle that is not a car from both personal injury protection and uninsured motorist coverage. *DeHerrera v. Sentry Insurance Co.*, 992 P.2d 629 (Colo.App. 1999). We hold that excluding relatives of the named insured from personal injury protection coverage and uninsured motorist coverage based on their occupancy in a particular vehicle violates the mandates of Colorado statutes and contravenes public policy.

The plaintiff, Elizabeth DeHerrera, is the named insured of an automobile policy carried by Sentry Insurance Company, the respondent. DeHerrera's son was injured in an accident with a pickup truck while riding his off-road motorcycle. DeHerrera sued Sentry seeking personal injury protection and underinsured motorist coverage because the owner of the pickup possessed a limited amount of liability insurance. Sentry denied coverage, claiming that the policy excludes from coverage persons occupying a vehicle that is not a car. Thus, applying the policy definition of "car," a four-wheeled motor vehicle, Sentry claimed that this condition excluded DeHerrera's son from coverage be-

cause he was riding a motorcycle, and thus not occupying a car, when injured.

In the trial court, DeHerrera sought a declaratory judgment construing Sentry's policy to permit her to recover personal injury protection (PIP) and underinsured motorist coverage (UM), a derivative of uninsured motorist coverage (UIM) (collectively UM/UIM). Both parties filed motions for summary judgment. The trial court awarded summary judgment in favor of Sentry and DeHerrera appealed.

The court of appeals affirmed, holding that the insurance contract unambiguously denies both PIP coverage and UM/UIM coverage to an insured who is neither a pedestrian nor an occupant of a car. Thus, applying the definition section of the policy, the court of appeals held that because DeHerrera's son was riding a motorcycle at the time of injury (and thus not an occupant of a *car* ), DeHerrera is not entitled to PIP or UM/UIM coverage. *DeHerrera*, 992 P.2d at 633–34. Further, that court relied on Colorado case law to hold that the pertinent Colorado statutes do not require PIP or UM/UIM coverage for a person riding a motorcycle at the time of injury. *Id.* Hence, the court of appeals affirmed the award of summary judgment in favor of Sentry. *Id.* at 635.

DeHerrera appealed. We granted certiorari to determine her eligibility for PIP and UM/UIM coverage. We hold that a policy provision restricting PIP coverage for relatives of named insureds to persons occupying a car at the time of injury places an impermissible restriction on the mandatory PIP coverage required by statute. Section 10–4–707(1)(a) of the Colorado Auto Accident Reparations Act unambiguously requires PIP coverage to apply to a relative of a named insured when "injured in an accident involving *any* motor vehicle" (emphasis added) irrespective of the type of vehicle driven at the time of injury. Likewise, we hold that the language and purpose of the UM/UIM statute require an insurer to provide UM/UIM benefits to a person insured under the policy when injured in an accident caused by an uninsured or underinsured motorist without regard to the vehicle occupied by the insured

at the time of injury. Thus, we do not reach the issue of whether the Sentry policy unambiguously conditions PIP or UM/UIM coverage to a person occupying a car at the time of injury because, irrespective of the provisions of the policy, our statutes mandate coverage in this case.

Hence, we reverse the judgment of the court of appeals and remand this case to the court of appeals to return the case to the trial court with directions to grant DeHerrera's motion for summary judgment on her claims for PIP and UM/UIM coverage.

## II. FACTS AND PROCEDURAL HISTORY

In this case DeHerrera's son was riding his off-road motorcycle when injured in an accident with a pickup truck. As a result of the accident, he suffered injuries for which the medical expenses exceeded $100,000. The driver of the pickup truck paid the limit of his liability insurance, $50,000, to DeHerrera to cover the expense.

DeHerrera holds an insurance policy from Sentry on two automobiles that provides both PIP and UM/UIM coverage to her, her spouse, and her son as a member of the family who is a resident of the household. The limit of coverage for both PIP and UM/UIM insurance in the Sentry policy is $100,000 per person and $300,000 per accident. The motorcycle involved in the accident is not a vehicle covered by the Sentry policy.

The insurance contract between Sentry and DeHerrera consists of two parts, a "Plain Talk Car Policy" and an endorsement. The plain talk portion of the policy provides a detailed description of UM/UIM insurance:

> We promise to pay damages ... the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury *you* suffer in a *car accident* while *occupying* a *car* or, as a pedestrian, as a result of having been struck by an uninsured *motor vehicle.*

(Emphasis in original.)[1] An uninsured motor vehicle is defined in the policy in part as

---

1. The DeHerrera insurance policy emphasizes all words that are defined terms in the policy.

a "motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage." Neither party disputes that the accident involved an underinsured motorist for which uninsured motorist protection may be available.[2] The plain talk section of the policy also defines Sentry's obligation to provide liability insurance: "We promise to pay damages . . . for bodily injury or property damage for which the law holds *you* responsible because of a *car accident* involving a *car* we insure."

The endorsement section of the insurance contract states Sentry's obligations to provide PIP coverage:

We will pay, in accordance with the Colorado Auto Accident Reparations Act, personal injury protection benefits shown as applicable in the Schedule or Declarations to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the use or operation of a motor vehicle.

The PIP schedule provides that one benefit under PIP coverage is payment of medical expenses. The plain talk portion of the car policy describes Sentry's obligation to pay medical expenses as:

We promise to pay medical expenses for *your* bodily injury, sickness, disease or death suffered in a *car accident* while *occupying* a *car* or, as a pedestrian, as a result of having been struck by a *motor vehicle*.

The policy also provides a definition section, which is in pertinent part:

*Car*; a 4 wheel motor vehicle licensed for use on public roads. It includes any motor home that isn't used for business purposes and any utility trailer.

*You, your*; means the person named on the declarations page and that person's husband or wife if a resident of the same household. It also means a member of the family who is a resident of the household and who doesn't own a *car* or whose spouse doesn't own a *car*.

DeHerrera filed claims for personal injury protection and underinsured motorist coverage under this policy, which Sentry denied. DeHerrera thus brought suit seeking a declaratory judgment that the language of the Sentry policy entitles her to PIP and UM/UIM coverage. The trial court granted Sentry's motion for summary judgment and DeHerrera appealed.

The court of appeals affirmed. Reading the endorsement and the policy language together, that court concluded the insurance contract unambiguously fails to provide PIP coverage in this case. *DeHerrera*, 992 P.2d at 633. The court of appeals noted that the endorsement states that PIP coverage applies to an accident arising out of the use or operation of a motor vehicle. If this were the only condition of payment, then PIP coverage would apply because the pickup truck is a motor vehicle within the definition of the endorsement.[3] However, the court of appeals concluded that other portions of the policy provide "additional, but not conflicting, conditions to payment." *DeHerrera*, 992 P.2d at 633. Significantly, the endorsement states an obligation to provide PIP coverage as stated in the *schedule*, which in turn provides for coverage of medical expenses. As described in the plain talk car policy, *medical expense insurance only covers persons occupying a car at the time of injury.* The court of appeals held that this condition, found in the body of the policy, "which excludes motorcyclists from coverage for PIP benefits," describes the circumstances in which the insurer is obligated to make payment in a manner that is consistent with conditions found in the endorsement. *Id.* Thus, that court held that the insurance contract unambiguously denies PIP coverage to persons riding a motorcycle at the time of injury. *Id.*

In addition, the court of appeals held that PIP coverage is not required under the Colo-

---

2. Because the limit of the pickup truck driver's liability insurance was $50,000, while DeHerrera carried a $100,000 limit on her UIM coverage, the pickup truck driver is an underinsured motorist.

3. The endorsement defines a motor vehicle as "any motor vehicle required to be registered and licensed for operation on the public highways of Colorado or any other jurisdiction."

rado Auto Accident Reparations Act (No Fault Act), §§ 10–4–701 to –726, 3 C.R.S. (2000), since the statute requires PIP coverage only for a certain class of motor vehicles, a class which specifically excludes motorcycles and off-road vehicles. *DeHerrera*, 992 P.2d at 633 (citing *Thompson v. Dairyland Ins. Co.*, 618 P.2d 736 (Colo.App.1980)). Because the injured insured was riding an off-road motorcycle, the court held that PIP coverage is not required by statute.

Turning to the UM/UIM issue, the court of appeals further held that the insurance policy unambiguously denies UM/UIM coverage. *Id.* at 634. The court held that the plain and ordinary language of the policy indicates an express intent to limit UM/UIM insurance to pedestrians and persons occupying a car, which upon application of the definition section of the policy, denies coverage to a person riding a motorcycle who is injured in an accident with another motor vehicle. *Id.* at 634.

Additionally, the court concluded that statutory requirements of section 10–4–609 (UM/UIM statute) of the Automobile Insurance Policy–Regulations statute, §§ 10–4–601 to 10–4–615, do not mandate UM/UIM coverage in this case. Relying on *Allstate Indemnity Co. v. Gonzales*, 902 P.2d 953 (Colo.App. 1995), the court of appeals held that excluding motorcycles from UM/UIM coverage does not violate public policy nor does narrowing UM/UIM coverage to circumstances where a person is occupying an automobile violate public policy. *Id.*

We granted certiorari to determine whether either the insurance policy or statutory requirements entitle DeHerrera to PIP or UM/UIM coverage.[4]

4. The precise issues on which we granted certiorari are as follows:

1. Whether the court of appeals erred by holding that the policy in this case excluded personal injury protection coverage for a motorcycle accident, where the accident also involved another motor vehicle.
2. Whether the court of appeals erred by holding that the policy in this case unambiguously excluded an individual riding a motorcycle from uninsured motorist coverage.
3. Whether the court of appeals erred by holding that a provision in an uninsured motorist policy limiting coverage to those "occupying a

## III. ANALYSIS

### A. PIP Coverage

 Sentry argues that the insurance policy unambiguously denies coverage to a person occupying a vehicle that is not a car at the time of injury and thus denies coverage to the motorcyclist, a person not occupying a car, in this case. Before addressing the language of the contract, we first look to the mandates of the No Fault Act to determine the minimum PIP coverage required by statute. We hold that an insurance policy provision that conditions PIP coverage for the relative of a named insured on occupancy in a vehicle at the time of injury is void. Thus, it is unnecessary for us to address the issue of whether the Sentry policy is unambiguous because, irrespective of the provisions of the policy, our statutes mandate PIP coverage in this case.

 Familiar rules of statutory construction guide us to determine the scope of mandatory PIP coverage required by the No Fault Act. We interpret a statute in accordance with its plain and ordinary meaning in order to give full effect to the intent of the legislature. *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 97 (Colo.1995). If a statute is ambiguous, then we may look to other aids of statutory construction to determine legislative intent. *Id.*

The No Fault Act requires that an insurance carrier provide PIP coverage to three classes of persons: (1) the named insured, (2) relatives of the named insured, and (3) "any other person occupying a described motor vehicle with the consent of the insured." § 10–4–707(1).[5]

car or, as a pedestrian" is not a violation of the public policy expressed in the uninsured motorist insurance statute, § 10–4–609, 3 C.R.S. (1999).

5. Section 10–4–707(1) provides:

(1) The coverages described in section 10–4–706(1)(b) to (1)(e) or alternatively, as applicable, section 10–4–706(2) or (3) shall be applicable to:
(a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury

■ As is pertinent to the facts of this case, PIP insurance applies to the relative of a named insured "when injured in an accident involving *any* motor vehicle" except where the relative is injured "as a result of the use or operation of his own motor vehicle not actually covered under the terms of this part 7." § 10–4–707(1)(b) (requiring PIP coverage for relatives of a named insured under circumstances described in section 10–4–707(1)(a)); § 10–4–707(1)(a) (requiring coverage for named insureds when "injured in an accident involving any motor vehicle") (emphasis added). Thus, under the plain language of the statute, subject to some statutory exclusions, PIP coverage for relatives of named insureds is mandatory irrespective of a person's occupancy in a vehicle, as long as *any* vehicle involved in the accident qualifies as a motor vehicle.[6]

The court of appeals relied upon, and Sentry urges us to rely on, the case of *Thompson v. Dairyland Insurance Co.*, 618 P.2d 736 (Colo.App.1980), to hold that PIP coverage is not required under the No Fault Act for persons riding a motorcycle at the time of injury because motorcycles are not within the class of motor vehicles required to have an automobile insurance policy that includes PIP coverage.

Although the facts of *Thompson* are similar to this case, the court's reason for denying PIP coverage in that case does not apply here. The *Thompson* court denied coverage because the plaintiff fit a statutory exception to mandatory PIP coverage, an exception which Sentry has not argued applies in this case. *See Thompson*, 618 P.2d at 737 (rejecting PIP coverage because the plaintiff was riding a motor vehicle he owned, but which was uninsured).[7]

■ Even though *Thompson* concerned a ground for exclusion of PIP coverage not argued here, we address the court of appeals' reliance upon *Thompson*. That court reasoned that since the No Fault Act does not require a motorcycle insurance policy to include PIP coverage, the statute does not mandate PIP insurance coverage for a person injured while riding a motorcycle. As explained earlier, mandatory PIP coverage applies to specified statutory classes of *persons* and not classes of *vehicles*. Thus, we hold that, subject to statutory exclusions, the plain language of the statute requires PIP coverage when the relative of a named in-

---

is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of this part 7; (b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere), except where the relative is injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of this part 7; (c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured or while a pedestrian if injured in an accident involving the described motor vehicle.

6. A statutory exception for mandatory PIP coverage involves the kind of vehicle driven by the injured person. The statute states, in pertinent part, that a relative of a named insured is not eligible for PIP insurance if "injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of this Part 7." § 10–4–707(1)(b). Sentry has not argued that this exception applies in this case, and thus we do not address this exclusion in this opinion.

7. *See supra* note 5. We express no opinion as to whether the exclusion used to deny PIP coverage in *Thompson* applies to DeHerrera in this case because Sentry has not argued the applicability of the exclusion and in fact has admitted in the trial court that the exclusion does not apply. The statutory exclusion to mandatory PIP coverage applies to an insured whose injuries result from "the use or operation of the [insured's] own *motor vehicle* not actually covered under the terms of [the No Fault Act]." § 10–4–707(1)(b) (emphasis added). This section of the No Fault Act defines a motor vehicle as a vehicle "required to be licensed for operation on the public highways of this state or any other jurisdiction." § 10–4–707(2). Sentry admitted in their reply to DeHerrera's motion for summary judgment to the trial court that "it is undisputed that Plaintiff's motorcycle was not required to be registered and licensed for operation on the public highways of the State of Colorado, but was rather an off-road vehicle." Because Sentry admitted that an off-road motorcycle is not a motor vehicle within the applicable definition, it has admitted that the statutory exclusion from mandatory PIP coverage does not apply in this case.

sured is injured in an accident involving *any* motor vehicle, irrespective of that person's occupancy in a vehicle covered by a PIP insurance policy at the time of injury.

Although the No Fault Act unambiguously requires that PIP coverage include a person in DeHerrera's circumstances, we find further support for our holding in the language of the No Fault Act regarding the specified third class of persons to whom mandatory PIP coverage applies. This class requires PIP coverage for "any other person occupying the described motor vehicle . . . ." § 10–4–707(1)(c). As to this third class of persons, the statutory requirement expressly excludes *persons not occupying an insured vehicle from PIP coverage.* Because the legislature failed to restrict, in a similar way, PIP coverage for relatives of named insureds based upon occupancy of an insured vehicle, we presume from the absence of this restriction that the legislature did not intend for it to apply. *Lunsford v. Western States Life Ins.,* 908 P.2d 79, 84 (Colo.1995); *see also Joseph v. Wiles,* 223 F.3d 1155, 1161 (10th Cir.2000) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

■ An insurance contract that denies statutorily mandated coverage is void and unenforceable. *Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227, 231 (Colo.1984) (holding that policy language that limits coverage required under the No Fault Act is invalid). We hold that PIP coverage is mandatory when a relative of a named insured is injured in an accident with *any* motor vehicle, irrespective of the insured's occupancy in a particular vehicle at the time of injury, subject to statutory exclusions. Thus we conclude that even if we were to assume that the Sentry policy unambiguously denies coverage to DeHerrera in this case based on failure to occupy a car at the time of injury, that restriction would be void. We therefore decline to address this issue.

■ Reading the mandatory requirements of the No Fault Act into the policy, we conclude that Sentry must provide PIP cov-

erage to the plaintiff in this case if he was in an accident involving *any* motor vehicle and no statutory exclusions apply. *See Aetna Cas. & Sur. Co.,* 906 P.2d at 101 (applying mandatory coverage requirements to an insurance policy that violated those requirements). In this case the relative of a named insured was injured in an accident involving a pickup truck, which is a "motor vehicle" under the applicable definition. *See* § 10–4–707(2) (defining "motor vehicle" as a vehicle "required to be registered and licensed for operation on the public highways of this state"). The parties have not argued that any statutory exclusions apply. Hence, we hold that the statute unambiguously requires that Sentry provide PIP coverage in this case.

### B. UM/UIM Coverage

■ DeHerrera argues that Sentry violated statutory mandates for UM/UIM coverage when it denied UM/UIM benefits because her son occupied a vehicle that was not a car at the time of injury. If a policy provision violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage" then it may be void and unenforceable. *Terranova v. State Farm Mut. Auto. Ins. Co. .,* 800 P.2d 58, 60 (Colo. 1990). Because "the General Assembly, by enacting section 10–4–609, did not intend to set forth comprehensive requirements for uninsured motorist coverage," we look to both the plain language of the statute and its legislative purpose to determine if the Sentry policy violates statutory mandates. *See id.* at 62. A policy that limits UM/UIM benefits under circumstances where the General Assembly intended for UM/UIM benefits to be recovered is invalid. *Id.* at 63.

An insurer must offer UM/UIM coverage in an automobile liability or motor vehicle liability policy. If an insured purchases such coverage, then an insurer must provide UM/UIM benefits when an insured person is "legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10–4–609(1)(a). In other words, an insured is entitled to recover UM/UIM benefits when a person who is at fault in an accident does not have any liability insur-

ance. UM/UIM benefits are also available when the tortfeasor is the owner or driver of an underinsured motor vehicle. § 10–4–609(4). An underinsured motor vehicle is defined in part as a land motor vehicle insured by a liability policy, where the limits for liability coverage are less than the limits for UM/UIM insurance under the injured insured's own policy. § 10–4–609(4)(a). Applying this definition to the statute, if an insured's damages exceed the limits of the tortfeasor's liability coverage, an injured insured may receive compensation from her own policy to cover the remaining portion of her damages, up to the limits of her UM/UIM insurance. In this way, UM/UIM coverage replaces the benefits an innocent injured insured would have recovered from an uninsured or underinsured tortfeasor, if the tortfeasor had been insured for liability coverage to the same extent that the injured insured was covered for UM/UIM benefits.

Other sections of the UM/UIM statute support the principle that the limits of an injured insured's UM/UIM coverage replace the uninsured or underinsured motorist's liability limits. The statute imposes a duty on an insurance carrier to offer an insured the opportunity to raise her limits for UM/UIM coverage to an amount higher than the statutory minimum, which is $25,000 per person and $50,000 per accident. §§ 10–4–609(1), 609(2); *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo.1992). The minimum limits for liability insurance coverage are set at the same level. § 42–7–413(1)(c), 11 C.R.S. (2000). Thus, the statute requires an insurer to offer an insured the opportunity to purchase more than the minimum UM/UIM insurance because of the effect of the statute in an instance where both parties carry policies with the minimum limits of coverage. In such a case, replacing liability limits of a tortfeasor with UM/UIM limits of an injured insured would not create any additional benefit for the injured insured. *See Allstate Ins. Co.*, 830 P.2d at 913. An injured insured would still only receive $25,000 to cover her personal injuries even if her damages exceeded that amount. If insurers were not required to offer UM/UIM insurance at higher levels than the minimum liability insurance, then the intent of the statute to protect insureds against the risk of inadequate compensation for injures caused by an underinsured motorist would be frustrated. *Id.* at 913.

The effect of the statute to replace an uninsured or underinsured tortfeasor's automobile liability limits with an innocent injured insured's UM/UIM coverage furthers the public policy declared by the legislature when it first enacted the statute, which is "to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333. By providing an insured the opportunity to protect against loss, up to policy limits, resulting from the negligent conduct of financially irresponsible motorists, the UM/UIM statute permits an insured "to receive the benefits thereof to the extent necessary for full compensation for loss" sustained by the insured. *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 763–765 (Colo.1989); *see also Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 492 (Colo.1998) ("The purpose of the UM statute is to ensure that individuals injured in an accident will be compensated for their losses even if the other motorist is uninsured.").

Because of the important policy behind UM/UIM insurance to protect persons from the often-devastating consequences of motor vehicle accidents, we have concluded that great weight must be accorded this legislative intent. As we turn to a discussion of whether the Sentry policy provisions concerning UM/UIM coverage comply with statutory minimums, we are also mindful of the nature of UM/UIM insurance coverage, the limits of which function, in effect, as a replacement for an uninsured or underinsured tortfeasor's automobile liability limits.

■ We now address whether DeHerrera is eligible for UM/UIM coverage. As with PIP coverage, Sentry argues that the policy unambiguously fails to provide UM/UIM coverage to a person occupying a vehicle that is not a car at the time of injury and thus excludes the motorcyclist from coverage in this case.

■ The UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury. Rather, it simply states that UM/UIM coverage, if not waived by the named insured, must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10–4–609(1). This phrase, " 'persons insured thereunder' means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is issuing." *Aetna Cas. & Sur. Co.*, 906 P.2d at 97 (emphasis added). Thus, the statute provides coverage for *persons;* it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of *vehicle.*

■ This construction of the UM/UIM statute is consistent with the effect of UM/UIM coverage limits to act as a replacement for the liability policy limits of an uninsured or underinsured motorist who is at fault in a motor vehicle accident. If a motorist insures a vehicle for liability coverage, his policy affords protection to all members of the public injured by negligent conduct "arising out of the use of the motor vehicle," irrespective of whether the injured person was a pedestrian, a bicyclist, a motorcyclist, or an occupant of a car. § 10–4–706(1)(a); *see also* § 42–7–413(1)(c); *Kohl v. Union Ins. Co.*, 731 P.2d 134, 135 (Colo.1986) (liability coverage applies whenever the injury is causally related to a conceivable use of the insured vehicle); *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So.2d 229, 236 (Fla.1971) ("If an auto liability policy insured negligently hits another with his insured automobile, it is immaterial whether such other is a pedestrian or occupies any particular vehicle; the insured's carrier is liable."). Thus, because UM/UIM insurance is designed to protect an innocent insured as if the person at fault had been insured for liability, then an injured insured is covered by UM/UIM insurance "*whenever* or *wherever* bodily injury is inflicted upon him by the negligence of an uninsured motorist." *Mullis*, 252 So.2d at 238 (emphasis in original). In other words, the injured insured would have received the benefits of the uninsured or underinsured tortfeasor's liability policy without regard to the injured insured's location at the time of injury, had that uninsured or underinsured motorist been insured. *See Kral*, 784 P.2d at 764 (concluding that the UM/UIM statute places "an injured party having uninsured motorist coverage in the same position as if the uninsured motorist had been insured").

Other states with similar UM/UIM statutes have also held that a carrier must provide UM/UIM coverage to a *person* irrespective of the *vehicle* occupied by the injured insured. *See Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 829 P.2d 897, 900 (1992) ("Uninsured motorist insurance provides coverage to the insured and is not tied or limited to actual occupancy of a particular vehicle."); *Fisher v. Morrison*, 519 So.2d 805, 810 (La. App.1987); *Hickman v. Cmty. Serv. Ins. Co.*, 78 Mich.App. 1, 259 N.W.2d 367, 369 (1977) ("an offer of uninsured motorist coverage must be extended for protection from injuries caused by uninsured motorists wherever the 'insured' happens to be and whatever the 'insured' happens to be doing at the time of the injury"); *Kaysen v. Fed. Ins. Co.*, 268 N.W.2d 920 (Minn.1978) ("uninsured motorist protection is not coverage for vehicles but of persons, even though it is contained in an insurance policy otherwise insuring an automobile"), superceded by statute, *Wintz v. Colonial Ins. Co.*, 542 N.W.2d 625 (Minn. 1996); *Progressive Am. Ins. Co. v. Glenn*, 428 So.2d 367, 368 (Fla.Dist.Ct.App.1983) (holding impermissible an attempt by an insurance carrier "to exclude uninsured motorist's coverage based solely upon the mode of transportation").

The court of appeals, however, relied on *Allstate Indemnity Co. v. Gonzales*, 902 P.2d 953 (Colo.App.1995), to hold that it is permissible for an insurer to deny coverage to an insured based on occupancy in a particular vehicle at the time of injury. *See DeHerrera*, 992 P.2d at 634. *Allstate* held that because the UM/UIM statute does not require an insurance carrier to offer UM/UIM insurance in a motorcycle insurance policy, an insurance carrier may exclude a motorcyclist from UM/UIM coverage in any policy. 902 P.2d at 955–56 (applying section 10–4–

601(2)). This analysis is flawed because it focuses on the type of *vehicle* insured, rather than on the class of *persons* insured for UM/UIM coverage. We hold that the language of the UM/UIM statute and the purpose of that statute require that UM/UIM insurance apply to an insured person when injured by a financially irresponsible motorist, irrespective of the vehicle the injured insured occupies at the time of injury. Thus, the court of appeals' reliance on *Allstate* in this case is misplaced.

Before applying our holding to the facts of this case, we note that we do not address whether the Sentry policy unambiguously denies UM/UIM coverage to an insured based on occupancy in a vehicle that is not a car because we hold that, irrespective of the policy's ambiguity, such a restriction violates public policy and is void.

▬▬▬▬ DeHerrera's son, as a resident relative of the named insured, is a person insured under the policy. He was injured in an accident arising out of the use of a motor vehicle, however he was not fully compensated for his injuries because the motorist at fault for the accident did not carry enough liability insurance. DeHerrera, however, had purchased UM/UIM insurance from Sentry in limits higher than the limits of the underinsured motorist's liability policy. We hold that the UM/UIM statute requires that UM/UIM insurance apply to an insured person who purchases such coverage when injured in an accident caused by an underinsured motorist, irrespective of the vehicle the injured insured occupies at the time of injury. The circumstances of this case comply with these requirements. Thus, we require Sentry to provide UM/UIM benefits to DeHerrera to compensate her for damages in this case.

We note that the argument can be made that requiring UM/UIM insurance irrespective of the vehicle occupied by an insured at the time of injury may encourage unjust results in particular circumstances. For instance, a family owning more than one vehicle may purchase insurance for only one vehicle, under the rule of this case, and yet recover UM/UIM benefits when struck by an uninsured motorist while occupying any of its owned but uninsured vehicles. Further, Sentry argues that it is unjust to require an insurance carrier to assume the increased risk of injury associated with riding a motorcycle. However, the UM/UIM statute, unlike the No Fault Act, does not exclude UM/UIM coverage based on occupancy of an owned but uninsured vehicle, and also does not exclude UM/UIM coverage for motorcyclists.[8] Therefore, we decline to adopt these exclusions because no such exclusions have been enacted by the General Assembly in the UM/UIM statute. *Golden Animal Hosp. v. Horton*, 897 P.2d 833, 836 (Colo.1995).[9]

---

8. We recognize that in *Williams–Diehl v. State Farm Fire and Casualty Co.*, 793 P.2d 587, 590 (Colo.App.1989), the court of appeals held an "owned but uninsured" exclusionary clause enforceable as applied to UM/UIM benefits. Although we do not address that precise issue in this case, to the extent that decision is in conflict with this opinion, we disapprove. We further note that our opinion in *Principal Mutual Life Insurance Co. v. Progressive Mountain Insurance Co.*, 27 P.3d 343, 346–347 (Colo.2001), to the extent it relies on *Williams–Diehl*, is not in conflict with this opinion.

9. The Minnesota legislature amended a statute substantially similar to ours in 1985 to allow insurance companies to exclude certain vehicles from uninsured motorist coverage. Section 65B.49, subd. 3a states in pertinent part:

(1) No plan of reparation security may be renewed, delivered or issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless separate uninsured and underinsured motorist coverages are provided therein. Each coverage, at a minimum, must provide limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident. In the case of injury to, or the death of, two or more persons in any accident, the amount available to any one person must not exceed the coverage limit provided for injury to, or the death of, one person in any accident.

. . . .

(5) If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is

## IV. CONCLUSION

Hence, we reverse the judgment of the court of appeals and remand this case to that court to return this case to the trial court with directions to grant DeHerrera's motion for summary judgment on her claims for PIP and UIM coverage.

otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

If at the time of the accident the injured person is not occupying a motor vehicle or motorcycle, the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.

. . . .

(7) The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle.

. . . .

(8) The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motorcycle owned by the insured.

Minn.Stat. § 65B.49, subd. 3a (2000).