**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 28 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GLENN R. GRAHAM,

      Plaintiff - Appellant,

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY, an Ohio
corporation,

      Defendant - Appellee.

No. 03-1507
(D.C. No. 03-K-713 (BNB))
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **KELLY**, and **McCONNELL**, Circuit Judges.

Plaintiff-Appellant Glenn R. Graham appeals from the district court's order

dismissing his action against Defendant-Appellee insurer, Progressive Casualty

Insurance Company ("Progressive"). Our jurisdiction arises under 28 U.S.C. §

1291 and we affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Background

On May 9, 2001, Mr. Graham was injured in an accident in Fremont County, Colorado, while operating his motorcycle. At the time of the accident, Mr. Graham was insured by Progressive under two motor vehicle policies; one policy covered Mr. Graham's automobiles, while the other covered his motorcycle. Mr. Graham's automobile policy provided personal injury protection ("PIP") coverage. His motorcycle policy provided no such coverage.

Following the accident, Mr. Graham submitted a claim for PIP benefits under his automobile policy. Progressive initially sent him an application for PIP benefits and paid a limited amount of benefits under the policy. Progressive subsequently determined that, because he was operating his motorcycle at the time of the accident, Mr. Graham was not entitled to PIP benefits under the policy. Progressive advised Mr. Graham of its error and ceased paying PIP benefits.

On April 23, 2003, Mr. Graham filed this diversity suit against Progressive seeking declaratory relief that his injuries were compensable under the PIP coverage provided in his automobile insurance policy. In addition, Mr. Graham sought damages arising from breach of contract and violation of Colorado's insurance laws, breach of the implied covenant of good faith and fair dealing, statutory willful and wanton breach of contract, bad faith breach of contract, and deceptive trade practice.

On June 2, 2003, Progressive moved the district court to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Progressive argued that it had no contractual obligation to provide PIP benefits under the terms of the policy and that the exclusion of PIP benefits to an insured involved in an accident while operating his own street motorcycle was valid under Colorado law. Progressive urged that Lamb v. GEICO General Insurance Co., 77 P.3d 748 (Colo. Ct. App. 2002), cert. denied, 2003 WL 22331939 (Colo. Oct. 14, 2003), was dispositive of the issues before the district court and mandated dismissal of Mr. Graham's claims. The district court agreed with Progressive.

On appeal Mr. Graham argues that: (1) the plain language of Progressive's automobile insurance policy extends PIP coverage under these circumstances; (2) Progressive's policy contains an unlawful restriction on PIP coverage; (3) the Lamb decision is not controlling nor dispositive of the claims at issue.

Discussion

We review the district court's grant of a motion to dismiss under Rule 12(b)(6) de novo, applying the same standards as the district court. Montgomery v. City of Ardmore, 365 F.3d 926, 934-35 (10th Cir. 2004). We take all well-pleaded factual allegations in the complaint as true and view them in the light

most favorable to the non-movant. Id. at 935. Dismissal is appropriate only where it is apparent that the plaintiff can prove no set of facts in support of his claim. Id.

## A. The Plain Language of the Policy

Mr. Graham first asserts that the plain language of Progressive's automobile insurance policy extends PIP coverage under the circumstances of the instant case. Interpretation of an insurance policy is governed by traditional principles of contract law. Essex Ins. Co. v. Vincent, 52 F.3d 894, 896 (10th Cir. 1995). "'Unambiguous provisions of an insurance contract must be construed to give effect to their plain meaning.'" Id. (quoting Am. Family Mut. Ins. Co. v. Johnson, 816 P.2d 952, 953 (Colo. 1991)).

At the time of his accident, Mr. Graham's automobile insurance policy contained the following provision:

> PART II(A) - PERSONAL INJURY PROTECTION COVERAGE
>
> INSURING AGREEMENT
>
> Subject to our Limits of Liability, we will pay, in accordance with the Colorado Auto Accident Reparations Act, covered expenses incurred because of bodily injury:
>
> 1. caused by an accident;
> 2. sustained by an eligible injured person; and
> 3. arising out of the use or operation of a motor vehicle.

Aplt. App. at 73. Relevant here, the policy contained the following definition of

- 4 -

the term "eligible injured person" referenced in Part II(A)2:

> "Eligible injured person" or "eligible injured persons" means:
> a.      you or any relative sustaining bodily injury in an accident involving any motor vehicle; and
> . . . .
> When used in subsection "a" above, the term "motor vehicle" means any motor vehicle required to be registered and licensed for operation on the public highways of the State of Colorado or any other jurisdiction.

Id. at 74. Finally, in the context of Part II(A)3, the policy defines "motor vehicle" as

> any vehicle of a type required to be registered and licensed under the laws of the State of Colorado and which is designed to be propelled by an engine or motor. It does not include a motorcycle, motorscooter, minibike, snowmobile, bicycle with a motor or engine attached, or any vehicle designed primarily for use off the road or on rails.

Id. at 74.

Under the terms of Part II(A) of the policy, Mr. Graham is eligible for PIP coverage only if his injuries resulted from an accident, he was an eligible person at the time of injury, and the accident arose from the use or operation of a motor vehicle. Neither party disputes that Mr. Graham satisfies the coverage requirements in Parts II(A)1 and 2. Mr. Graham asserts that, because the other vehicle involved in the accident was indisputably a motor vehicle, he is entitled to PIP coverage for his expenses related to the accident. Aplt. Br. at 9. This despite the fact that the definition of "motor vehicle" in Part II(A)3 apparently functions

to deny coverage for injuries arising from the use or operation of a motorcycle.

We disagree with Mr. Graham's construction. The plain language of Part II(A) and its related definitions clearly negate PIP coverage to insureds injured while operating motorcycles. Were we to accept Mr. Graham's construction of Part II(A), we would be forced to conclude that the language in Part II(A)3 is superfluous or redundant. Satisfaction of the requirement in Part II(A)2 is premised on an accident involving *any* motor vehicle, including a motorcycle, required to be licensed or registered. Under these terms, Part II(A)2 would fairly encompass the construction Mr. Graham ascribes to Part II(A)3. As a result, to give Part II(A)3 meaning, we must conclude that through its definition of "motor vehicle" the provision operates to deny PIP coverage under the circumstances present here. Mr. Graham's injuries indeed arose, at least in part, from his "use or operation" of a motorcycle, a vehicle not encompassed by the terms of Part II(A)3. As such, Mr. Graham's claims fall outside the policy coverage. Having reached this determination, we need not address the parties' arguments with respect to any operative contract exclusion.

B. Validity Under Colorado Law

Having determined that the plain language of the automobile insurance policy indeed denies PIP coverage to insureds whose injuries arise from the use or operation of a motorcycle, we next consider whether this exclusion is valid under

Colorado law. Even where, as here, a policy term is unambiguous, a court may render it unenforceable "if it violates public policy by attempting to 'dilute, condition, or limit statutorily mandated coverage.'" Terranova v. State Farm Mut. Auto. Ins. Co., 800 P.2d 58, 60 (Colo. 1990) (quoting Meyer v. State Farm Mut. Auto. Ins. Co., 689 P.2d 585, 589 (Colo. 1984)).

When exercising diversity jurisdiction, a federal court must apply the law of the forum state as promulgated by that state's highest court. See Cooper v. Cent. & Southwest Servs., 271 F.3d 1247, 1251 (10th Cir. 2001). Absent a decision by the forum state's highest court, "we must 'predict the course that body would take if confronted with the issue.'" Vanover v. Cook, 260 F.3d 1182, 1186 (10th Cir. 2001)(quoting Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh, 236 F.3d 1260, 1267 (10th Cir. 2001)). Decisions by intermediate courts in the forum state are not considered controlling. See Rancho Lobo, Ltd. v. Devargas, 303 F.3d 1195, 1202 n.2 (10th Cir. 2002). We have explained, however, that "'[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1132 (10th Cir. 2002)(quoting Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 n.3 (1988)).

The Colorado Supreme Court has not resolved the issue arising in the instant case, i.e., whether an exclusion of PIP coverage in an automobile policy for insureds whose injuries arise from the use or operation of a street motorcycle is valid under Colorado law. Mr. Graham asserts that Progressive's exclusion of motorcycles from the definition of "motor vehicles" under Part II(A) of the policy impermissibly narrows the coverage in violation of Colorado law. In contrast, Progressive urges that the Colorado Court of Appeals' decision in Lamb v. Geico General Insurance Co., 77 P.3d 748 (Colo. Ct. App. 2003), cert. denied, 2003 WL 22331939 (Colo. Oct. 14, 2003), is dispositive of the statutory issues raised by the parties in the instant case. We agree.

In Lamb, the Colorado Court of Appeals was confronted with precisely this issue. Similar to the circumstances here, the plaintiff in Lamb was insured under both an automobile and a motorcycle policy by the defendant. 77 P.3d at 748. She was injured when the motorcycle she was operating collided with an automobile. Id. Only her automobile policy, however, contained PIP coverage. Id. at 748-49. The automobile policy "expressly excluded coverage for bodily injury resulting from the use or operation of a motor vehicle owned by the insured person but not insured under the policy." Id. at 749. Relying on the Colorado Supreme Court's decision in DeHerrera v. Sentry Insurance Co., 30 P.3d 167 (Colo. 2001), the trial court held that despite the exclusion the plaintiff was

entitled to PIP coverage under her automobile insurance policy. Lamb, 77 P.3d at 749. On appeal, the defendant argued that Colorado's No-Fault Act did not require PIP coverage for operators of street motorcycles and that the trial court erred in relying on DeHerrera. Id.

The Lamb court began by construing the terms of Colorado's No-Fault Act. The No-Fault Act required insurers to extend PIP coverage for

> [a]ccidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, *except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of* [the No-Fault Act].

Colo. Rev. Stat. § 10-4-707(1)(a) (repealed 2003) (emphasis added). Motorcycles are generally excluded from the definition of "motor vehicles" under other provisions of the No-Fault Act. See id. § 10-4-703(7) (repealed 2003). However, the Lamb court found that they were included within the context of section 10-4-707(1)(a). 77 P.3d at 749 (citing Colo. Rev. Stat. § 10-4-707(2) (repealed 2003) ("For purposes of [§ 10-4-707(1)(a)], 'motor vehicle' means any motor vehicle required to be registered and licensed for operation on the public highways of this state or any other jurisdiction.")). Because motorcycles were elsewhere not included under the definition of "motor vehicle" for purposes of applying the No-Fault Act's mandatory PIP coverage, the Lamb court found the exclusion in section 10-4-707(1)(a) operative on the facts before it. Id. at 750. Thus, the

insurer was not required to extend PIP coverage when the insured's injuries arose from her own use of a street motorcycle.  Id.

In so deciding, the Lamb court rejected the plaintiff's argument, identical to Mr. Graham's in the instant case, that the Colorado Supreme Court's decision in DeHerrera was controlling on the issue.  In DeHerrera, the court considered a claim for PIP coverage for injuries suffered by the son of the named insured who was involved in an accident with a truck while riding his own off-road motorcycle.  30 P.3d at 168.  A provision in the policy limited the PIP coverage to circumstances where the insured occupied a car at the time of injury, thus excluding persons riding a motorcycle.  Id. at 170.  The court of appeals validated the provision, holding that the No-Fault Act did not require PIP coverage for persons operating off-road motorcycles at the time of injury.  Id. at 171.

In reversing the court of appeals, the Colorado Supreme Court held that "under the plain language of the [No-Fault Act], subject to some statutory exclusions, PIP coverage for relatives of named insureds is mandatory irrespective of a person's occupancy in a vehicle, as long as *any* vehicle involved in the accident qualifies as a motor vehicle."  Id. at 172 (emphasis in original; underscoring added).  The court refused to express an opinion whether the exclusion found in sections 10-4-707(1)(a) and 10-4-707(1)(b) (applying to relatives of the named insured) applied in the case before it in that the insurer had

not argued its applicability and had admitted that it did not apply before the trial court. Id. at 172 nn.6, 7.

The Lamb court relied upon this reservation, emphasizing that the motorcycle involved in DeHerrera was an off-road vehicle. 77 P.3d at 751. Because off-road vehicles were not required to be registered in Colorado, the motorcycle in DeHerrera was not encompassed by the statutory definition of "motor vehicle" operative in section 10-4-707(1)(a). Thus, the Lamb court held that DeHerrera did not require PIP coverage for injuries arising from the operation of an insured's *street* motorcycle under an automobile insurance policy. Id.

The decision in Lamb effectively forecloses Mr. Graham's claims. Although the Colorado Court of Appeals' decision does not bind us, we find that court's reasoning persuasive and do not believe the Colorado Supreme Court would reach a different conclusion. As such, we hold that the policy provisions at issue in the instant case did not contain an unlawful restriction on PIP coverage and were valid under Colorado law as it existed at the time of accident.

C. Mr. Graham's Remaining Claims

Because we hold that the policy in the instant case excludes PIP coverage for insureds injured while operating or using a motorcycle, and further that such an exclusion is valid under Colorado law, Mr. Graham's remaining claims must

fail.  Despite assertions to the contrary, Mr. Graham's claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and deceptive trade practice necessarily depend on the existence and validity of the policy terms at the core of this dispute.  Our answer to the issues presented above is dispositive of these claims.  Part II(A) of the policy, including the definition of "motor vehicle" contained therein, is enforceable as written.  Thus, Progressive breached neither the contract nor an implied covenant when it denied Mr. Graham's claim for PIP benefits.  Moreover, in that Progressive's policy is entirely in keeping with the mandates of the No-Fault Act as it existed at the time of the accident, there is no evidence that the insurer engaged in an unfair trade practice.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge