**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES ANDERSON, on behalf of
himself and all others similarly
situated,

       Plaintiff-Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

       Defendant-Appellee.

No. 04-1291

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 02-F-382 (CBS))**

---

Leif Garrison (Robert B. Carey, Julie Cliff, with him on the briefs), The Cary
Law Firm, Colorado Springs, Colorado, for Plaintiff-Appellant.

Michael S. Freeman (Michael S. McCarthy, Heather Carson Perkins, with him on
the brief), Faegre & Benson, LLP, Denver, Colorado, for Defendant-Appellee.

---

Before **BRISCOE**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

After suffering injuries in a motorcycle accident, Plaintiff-appellant James Anderson brought a purported class action against State Farm Mutual Automobile Insurance Co. asserting, *inter alia*, common law bad faith and violations of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105(1)(e), (g), (u).  Accepting the recommendation of the magistrate judge, the district court dismissed Anderson's complaint under Fed. R. Civ. P. 12(b)(6) and entered judgment in favor of State Farm.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II.    BACKGROUND

While driving his motorcycle on July 23, 2001, Anderson was involved in an accident in which he sustained severe injuries.  At the time of the accident, both Anderson's motorcycle and his automobiles were insured by State Farm.[1]  The motorcycle policy provided Uninsured Motorist ("UM") and Underinsured Motorist ("UIM") coverage [hereinafter and collectively, "UM/UIM coverage"], but did not provide Personal Injury Protection ("PIP").  The automobile policies provided PIP coverage and UM/UIM coverage.  After the accident, State Farm determined the other driver, Mark Presley, also insured by State Farm, was at

---

[1]Anderson asserts that he purchased these policies in June 1999.

fault and paid Anderson $100,000 under Presley's policy. Anderson sought to obtain PIP benefits under his automobile policies, but State Farm rejected his request relying on the "owned but not insured" exclusion in the policy.[2]

A few months prior to Anderson's accident, the Colorado Supreme Court held that "the UM/UIM statute requires that UM/UIM insurance apply to an insured person who purchases such coverage when injured in an accident caused by an underinsured motorist, irrespective of the vehicle the injured insured occupies at the time of injury." *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 176 (Colo. 2001) (en banc). This ruling was a significant departure from the preexisting common understanding of the law by the insurance industry. For example, until *DeHerrera*, the "owned but not insured under this policy" exclusion in a policy providing UM/UIM coverage was routinely enforced. *See Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 745 (Colo. Ct. App. 2002) (collecting cases). Although the *DeHerrera* decision represented a dramatic shift in the understanding of insurance law in Colorado, the Colorado Court of Appeals held that *DeHerrera* applied retroactively because the Colorado Supreme Court

---

[2]Under this exclusion, insurance benefits are not available "whenever an insured is occupying a vehicle which is owned by the named insured but which is not insured under the policy in question." *Arguello v. State Farm Mut. Auto. Ins. Co.*, 599 P.2d 266, 268 (Colo. Ct. App. 1979).

was interpreting "an unambiguous statute of long standing." *Id.* at 747 (involving denial of coverage).

In response to the *DeHerrera* decision, State Farm distributed a mass mailing in November 2001 explaining the impact of *DeHerrera* to its insureds. In 2002 Anderson filed this class action in state court and State Farm removed the action pursuant to 28 U.S.C. §§ 1441 and 1446. Although Anderson's original complaint involved numerous claims related to State Farm's denial of PIP coverage, the only claims relevant to this appeal involve allegations of bad faith and violations of the CCPA. Both of these claims are premised on State Farm's alleged failure to disclose and misrepresentations relating to the nature of UM/UIM coverage.

In January 2004, State Farm moved to dismiss Anderson's amended complaint. After oral argument, the magistrate judge concluded that all remaining claims[3] in Anderson's complaint should be dismissed for failure to state a claim and recommended that State Farm's motion to dismiss be granted. Anderson objected to the recommendations of the magistrate judge and State Farm filed a response.

---

[3]At argument and in his surreply filed after arguments, Anderson withdrew several of his original claims.

The district court accepted and adopted the recommendations of the magistrate judge, dismissed Anderson's complaint under Fed. R. Civ. P. 12(b)(6), and thereafter entered judgment in favor of State Farm. In relevant part, the district court rejected Anderson's common law bad faith claim because Anderson's assertions both that (1) State Farm failed to effectively explain the effects of purchasing UM/UIM coverage after *DeHerrera* and (2) the mass mailer distributed by State Farm post-*DeHerrera* "was so vague as to be useless" were unsupported conclusory allegations insufficient to state a claim. Similarly, the court refused to accept as true Anderson's allegation that State Farm failed to "effectively" disclose material information related to UM/UIM coverage after *DeHerrera* because it was a legal conclusion rather than a factual allegation. Accordingly, the court concluded Anderson did not adequately state a claim for an unfair or deceptive trade practice under the CCPA.[4]

Anderson filed a motion for reconsideration with the district court that was opposed by State Farm. In the motion, Anderson argued that the district court incorrectly believed the mass mailer was mailed out prior to the operative events underlying his claim. Anderson asserted that his injury actually occurred at the

---

[4]The district court also agreed with the magistrate judge that Anderson failed to allege significant public impact required to bring a claim under the CCPA. Our disposition of Anderson's appeal makes it unnecessary to address this issue.

moment he purchased his insurance coverage, long before the mailing was distributed. Based on this alleged misunderstanding, Anderson claimed the court erroneously rejected his claim that State Farm failed to inform its insureds of the nature of UM/UIM coverage. Anderson further explained that the district court improperly ignored the *Jaimes* decision, which, according to Anderson, held that *DeHerrera* applied retroactively. Relying on *Jaimes*, Anderson argued that it is clear State Farm violated Colorado law mandating that UM/UIM coverage is personal rather than vehicle-specific when it sold Anderson his insurance policies.

The district court denied Anderson's motion and declined to amend its order. The court acknowledged that Anderson had alleged that State Farm did not disclose the effects of purchasing UM/UIM coverage on multiple vehicles, thus he was injured, if at all, the moment he purchased the duplicative coverages. The court further explained it was aware that State Farm did not notify Anderson of the *DeHerrera* ruling until after he purchased his coverage, noting that "State Farm *could* not have notified Mr. Anderson of the *DeHerrera* decision when he selected those coverages, because the Colorado Supreme Court had not yet decided *DeHerrera* at the time he made his coverage decisions." The district court concluded that Anderson's retroactivity argument was unavailing because "State Farm's conduct before the *DeHerrera* decision cannot be deemed bad faith or a violation of the CCPA merely because it did not comport with a judicial

decision that had yet to be rendered." The court also rejected Anderson's suggestion of injury during the time between the *DeHerrera* decision and State Farm's November 2001 mailing because Anderson never alleged that he purchased or renewed his insurance policies during this time.

On appeal Anderson asserts that the district court erred in dismissing his claims for common law bad faith and violations of the CCPA. Anderson argues that State Farm violated Colorado law by selling him multiple insurance policies providing UM/UIM coverage without disclosing that, because these policies are personal, rather than vehicle-specific, insuring more than one vehicle is largely duplicative. Anderson similarly asserts that State Farm falsely represented that UM/UIM coverage was vehicle-specific. The focus of Anderson's argument on appeal is the Colorado Court of Appeals' retroactivity ruling in *Jaimes*, 53 P.3d at 747. He contends that under *Jaimes*, Colorado law has always required UM/UIM coverage to be personal and therefore State Farm's failure to disclose this fact and any misrepresentations to the contrary violate the CCPA and constitute bad faith.

In response, State Farm argues that Anderson's position on appeal, based on the retroactive application of the *DeHerrera* decision, is not properly before this court because Anderson raised this theory for the first time in his motion for reconsideration, the denial of which he is not appealing. In the alternative, State Farm asserts that the district court correctly dismissed Anderson's claims because,

as a matter of law, State Farm did not act in bad faith or violate the CCPA. State Farm also argues that because Anderson's claim is actually for refunds of premiums paid, it is barred by the filed rate doctrine and he must seek relief through the prescribed administrative remedies available under Colorado law.

## III.   STANDARD OF REVIEW

This court reviews a Rule 12(b)(6) dismissal *de novo*, accepting all well-pleaded facts as true and in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotations omitted).

## IV.   DISCUSSION

While Anderson's motion for reconsideration was pending, he filed a notice of appeal with this court. Because Anderson never filed a notice of appeal related to the denial of the motion for reconsideration or sought to amend his original notice of appeal, this court only has jurisdiction over the appeal of the district court's order dated June 28, 2004. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *see also Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 444 (10th Cir.1990) ("Our appellate review is limited to final judgments or parts thereof that are designated in the notice of appeal."); Fed. R. App. P. 3(c). Although it is clear that the focus

of Anderson's claims have shifted dramatically since the filing of his amended complaint, a review of the record indicates that, contrary to State Farm's assertion, Anderson did argue his retroactivity theory before the magistrate judge. *See, e.g.*, Aplt.'s App. at 277-80. Thus, Anderson's primary legal theory regarding the retroactive application of *DeHerrera* was before the district court when it dismissed Anderson's complaint and is properly before this court on appeal. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1031-32 (10th Cir. 2002).

Anderson alleges that his injury occurred when he purchased his insurance policies from State Farm, prior to the Colorado Supreme Court's decision in *DeHerrera*. Although the district court addressed the effectiveness of the mass mailer distributed by State Farm in November 2001, on appeal Anderson disclaims reliance on the contents of the mailer as the basis for his claims. Accordingly, we analyze Anderson's claims based on the alleged injury suffered at the moment he purchased his insurance policies. It is not disputed that at that time State Farm was acting in accordance with the generally accepted understanding of insurance law in Colorado regarding the nature of UM/UIM coverage.

To succeed upon a claim for common law bad faith, a plaintiff must show that (1) the insurer's conduct was unreasonable and (2) the insurer had knowledge that the conduct was unreasonable or a reckless disregard for the fact that the

conduct was unreasonable. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275-76 (Colo. 1985) (en banc). For purposes of bad faith, the reasonableness of an insurer's conduct is evaluated under the circumstances that existed at the time. *See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. Ct. App. 2003) ("The determination of whether an insurer has in bad faith or willfully and wantonly breached its duties to an insured is one of reasonableness under the circumstances."); *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. Ct. App. 1996) (holding that insurer's decision to deny benefits "must be evaluated based on the information before the insurer at the time of that decision").

Actions taken in reasonable reliance on existing case law cannot constitute bad faith because such conduct is not unreasonable. *See Pham*, 70 P.3d at 572-73 (rejecting bad faith claim when insurer's denial of coverage was reasonably based on existing case law). State Farm did not act unreasonably because, at the time of Anderson's alleged injury, State Farm was relying on clear case law upholding owned-but-not-insured exclusions in insurance contracts providing UM/UIM coverage. *See Jaimes*, 53 P.3d at 745 (describing pre-*DeHerrera* law); *see also Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 61-62 (Colo. 1990) (en banc) (upholding exclusion of vehicle insured under the liability terms of a policy from UM/UIM coverage); *Arguello v. State Farm Mut. Auto. Ins. Co.*, 599 P.2d

266, 268 (Colo. Ct. App. 1979) (same). *Jaimes* held that *DeHerrera* should be applied retroactively to deny enforcement of a coverage exclusion void under Colorado law. 53 P.3d at 747. A decision to award coverage benefits pursuant to retroactive application of a judicial decision does not mean that the prior disclosures and representations of the insurer based on the previously-understood state of the law constitute bad faith. The reasonableness of an insurer's conduct is evaluated under the circumstances that existed at the time, including the state of the law. *See Pham*, 70 P.3d at 572-73. State Farm's explanation of UM/UIM coverage was based upon a reasonable, albeit mistaken, belief that under the law owned-but-not-insured exclusions in insurance policies providing UM/UIM coverage were valid. *See id.* Because State Farm did not act unreasonably, Anderson's bad faith claim necessarily fails.

> To bring a claim under the CCPA, a plaintiff is required to show:
>
> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (en banc). The CCPA defines a deceptive trade practice as, *inter alia*, (1) knowingly making "a false representation as to the characteristics,

ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith," Colo. Rev. Stat. § 6-1-105(e); (2) representing that "goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another," *id.* § 6-1-105(g); or (3) failing to "disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction," *id.* § 6-1-105(u). Because State Farm's prior explanations of UM/UIM coverage reflected a reasonable interpretation of the existing case law, it did not either make any representations which it knew or should have known to be false or act with reckless disregard. Furthermore, State Farm cannot be said to have failed to disclose a fact that was not known at the time. Anderson has therefore failed to state a claim for violations of the CCPA because, accepting all facts alleged as true, State Farm did not engage in a deceptive trade practice.

-12-

## V.    CONCLUSION

For the reasons set out above, the district court's dismissal of Anderson's complaint for failure to state a claim is **AFFIRMED**.[5]

---

[5]Our disposition of this case makes it unnecessary to address Anderson's other arguments or State Farm's assertion that Anderson's claims are barred by the filed rate doctrine and a failure to exhaust administrative remedies.